**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |
|---|---|
| KAIFI LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 1:25-cv-1370-ADA<br><br>JURY TRIAL DEMANDED |

**AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff KAIFI LLC ("KAIFI" or "Plaintiff") hereby alleges patent infringement against Defendant Google LLC ("Google" or "Defendant") as follows:

## PARTIES

1. KAIFI is a corporation organized and existing under the laws of the State of Texas, having a principal place of business at 5700 Tennyson Pkwy 300, Plano, Texas 75024.

2. Google is a corporation organized and existing under the laws of the State of Delaware, with principal places of business at 500 West 2nd Street, Austin, Texas 78701; and 1600 Amphitheatre Parkway, Mountain View, California 94043.  Google may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701.

## JURISDICTION AND VENUE

3. This patent infringement action arises under the patent laws of the United States, Title 35 of the United States Code ("U.S.C.") § 101 *et seq*., including 35 U.S.C. §§ 271, 281, 283, 284 and 285.

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1338(a).

5. Google is subject to this Court's specific and general personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

6. Personal jurisdiction also exists over Google because it transacts substantial business either directly or through its subsidiaries, affiliates, or intermediaries, some or all of which are its agents or alter egos, with entities and individuals in this State and this District, by, among other things, making, using, selling, offering for sale, importing, advertising, making available, and/or marketing products and services that infringe one or more claims of the asserted

1

patents, as alleged more particularly below.

7.      Google has sufficient minimum contacts with this State and this District because it regularly solicits and transacts business herein, and/or because it has engaged in persistent conduct and/or has derived substantial revenue from goods and services provided in this State and this District.

8.      Venue in this District is proper under 28 U.S.C. §§ 1391 and 1400(b) because, among other things, Google has committed acts of infringement in this District and has regular and established places of business in this District.

9.      Google does business, offers to sell and sells infringing products and services throughout the United States, this State, and this District, and introduces infringing products and services into the stream of commerce knowing that they will be sold in the United States, this State, and this District.

10.      Google has authorized sellers and sales representatives and/or does business, offers for sale and/or sells products and services pertinent to this Complaint across the United States, including throughout this State, including in and to consumers throughout this District, through its website.

11.      Google owns and operates the www.google.com website, which is accessible by, through, and in this District its residents.

12.      Google owns, leases, and/or operates in or out of one or more offices and/or other facilities in this District.

13.      Google maintains regular and established places of business within this District, including at:  500 West 2nd Street, Austin, Texas, 78701; 901 East 5th Street, Austin, Texas, 78702; and 601 West 2nd Street in Austin, Texas, 78701.  The Google locations and facilities in

this District are regular, physical, continuous, and established places of business. Google established, ratified, and controls these places of business. Google lists and describes these places of business on its own websites, on other public websites, and/or in its SEC filings. Google employs thousands of employees at these places of business from which it conducts business, including the infringing conduct, in this District to its benefit.

14. Google develops, makes, uses, imports, offers for sale, and/or sells in Texas and this District products and services that infringe the Asserted Patent. Google, directly and/or through intermediaries, ships, distributes, uses, offers for sale, sells, and/or advertises products and/or services in the United States, the State of Texas, and this District, including but not limited to infringing products as detailed below. Google solicits and has solicited customers in the State of Texas and in this District. Google has paying customers, who are residents of the State of Texas and this District, who each use and have used the infringing Google products and services in the State of Texas and in this District.

15. Google maintains a permanent and/or continuing presence within this District, and/or has the requisite minimum contacts with this District such that this venue is a fair and reasonable one. Google has transacted and, at the time of the filing of the Complaint, is continuing to transact business within this District, and has and continues to derive substantial revenue from infringing acts in this District.

## **ASSERTED PATENTS**

16. KAIFI owns the entire right, title, and interest in and to the following patent, including the right to seek damages for past and ongoing infringement: U.S. Patent No. 8,930,196 ("the '196 Patent").

17. The '196 Patent is entitled "System For Detecting Speech Interval And

Recognizing Continuous Speech In A Noisy Environment Through Real-Time Recognition Of Call Commands."  The '196 Patent was duly and legally issued by the United States Patent Office on January 6, 2015.  The named inventors are Heui-Suck Jung, Se-Hoon Chin, and Tae-Young Roh.  A true and correct copy of this patent is attached hereto as Exhibit 1.

18.    The '196 Patent was originally issued to KoreapowerVoice Co., Ltd. ("PowerVoice").  Located in Korea and founded in 2002, PowerVoice is a pioneer in voice recognition technologies.  PowerVoice's technologies include voice recognition and speaker verification engines for DSP and CPU modules, particularly used in security systems and voice recognition applications for smart devices and home networking.  Global companies have turned to PowerVoice technology for a wide variety of products, including home networking, appliances and heavy equipment, automotive systems and navigations, and smartphone applications.

19.    The claims of the '196 Patent are directed to patent-eligible subject matter and satisfy the requirements of 35 U.S.C. § 101.  The apparatus and methods taught by the '196 Patent solve technological problems and improve performance in speech recognition systems by, among other things, enabling detecting a speech interval in noisy environments using call commands, which "can solve the disadvantage of an isolated word recognition system which requires a special event for speech recognition while solving the disadvantage of a conventional keyword detection-based continuous speech recognition technique which requires not only a large computational load but also the change of a language model or post-processing."[1]  This enables, among other things, continuous speech recognition that is very robust in noisy

---

[1] Ex. 1 at 2:51-56.

4

environments.[2]

20.    In addition, the specification of the '196 Patent describes embodiments implementing the technological solution of the invention, including exemplary techniques and improvements to computer systems.  As one example, the specification describes aspects of an exemplary embodiment as follows: "a system for detecting a speech interval and recognizing continuous speech using real-time recognition of call commands, wherein when a speaker speaks a call command, the call command is recognized, confidence rate of the call command is measured, and a speech interval spoken subsequent to the call command is applied to a continuous speech recognition engine at a moment at which the call command is recognized, thus recognizing speech of the speaker.  In this case, the recognition of the call command is performed by a call command recognition network which is implemented using a Left-to-Right (LTR) model, and a speech frame input to the recognition network is configured to include predetermined tokens and is compared based on probability with the recognition network in real time.  In this case, each of the predetermined tokens includes the speech frame and a silence interval accompanied by noise.  In this case, the call command recognition network is configured such that, when an accumulated probability of the predetermined token which is computed in real time after passing through the call command recognition network falls within a range of a predetermined upper percentage, the call command is estimated to have been spoken, and the speech frame is transferred to a confidence measurement stage."[3]

21.    Furthermore, the '196 Patent describes exemplary techniques for call command recognition.  As an example, the specification describes an exemplary "call command

---

[2] *Id*. at 3:6-19.

[3] *Id*. at 3:55-4:11.

recognition network" including an "adaptive filter 421 [that] is a Finite Impulse Response (FIR) filter for automatically tracking the spectrum characteristics of surrounding noise from noise-containing input speech (all spoken Voices including call commands) and eliminating the surrounding noise."[4]  A "feature extraction unit 422 is a component for audibly modeling the spectrum characteristics of the input speech, having passed through the adaptive filter 421, for each frame, and converting the spectrum characteristics into robust parameters."[5]  And "keyword searching unit 423 determines whether relevant speech is a call command using an acoustic model database (DB), a pronunciation dictionary DB and a language model DB, and then determines whether to execute the continuous speech recognition routine.  The keyword searching unit 423 includes a token passing unit for configuring a speech frame, which includes a silence interval accompanied by noise and call commands from the speaker, in the form of a minimum number of tokens, and then searching for call commands, and a confidence detection unit for detecting the confidence of each recognized call command in relation to whether the recognized call command is an authentic or false command."[6]

22.     The specification further describes the technological solution of the invention, stating that, for example, the "scheme of the present invention has the advantages of remarkably reducing the memory capacity and computational processing ability which are necessary for a continuous speech recognition system using the conventional recognition network.  In order to solve the problems, the following technique is proposed in the present invention so that a higher rejection rate for unregistered words can be obtained and the speech recognition rate can be

---

[4] *Id*. at 5:28-34.

[5] *Id*. at 5:35-39.

[6] *Id*. at 5:40-52.

improved even though just a small computational load is used when the keyword-detection based continuous speech recognition system is implemented."[7]  Additional details and improvements of the invention are described in the '196 Patent, which is incorporated herein by reference.

23.     The '196 Patent was previously asserted in *KAIFI LLC v. Amazon.com, Inc., et al.*, Case 2:24-cv-00542 (E.D. Tex. July 17, 2024) ("Amazon Case").

24.     KAIFI owns the entire right, title, and interest in and to the following patent, including the right to seek damages for past and ongoing infringement:  U.S. Patent No. 8,040,232 ("the '232 Patent").

25.     The '232 Patent is entitled "USN Middleware Apparatus And Method For Generating Information Based On Data From Heterogeneous Sensor Networks And Information Service Providing System Using The Same."  The '232 Patent was duly and legally issued by the United States Patent Office on October 18, 2011.  The named inventors are Se-Won Oh, Yong-Joon Lee, and Jong-Hyun Park.  A true and correct copy of this patent is attached hereto as Exhibit 2.

26.     The '232 Patent was originally issued to Electronics and Telecommunications Research Institute ("ETRI").  Located in Korea and established in approximately 1976, ETRI is one of the world's leading research institutes and is considered one of the top research institutes in the area of wireless technologies.  ETRI's innovations include core technologies in the fields of information, communications, electronics, broadcasting and convergence.

27.     The claims of the '232 Patent are directed to patent-eligible subject matter and satisfy the requirements of 35 U.S.C. § 101.  The systems, apparatus, and methods taught by the '232 Patent solve technological problems with processing, integrating, and using data from

---

[7] *Id*. at 6:36-46.

heterogeneous sensor networks, which traditionally required significant control and computational cost and power resources.  For example, the '232 Patent enables use of an information service for these heterogeneous networks including a Ubiquitous Sensor Network (USN) middleware for extracting object and environment information by cleaning, classifying and integrating the message received from the sensor network data transmitter, generating conditional events, context aware information, circumstantial analysis information, and the other relevant knowledge contents from the extracted object and environment information, and providing the information service to an application program, the application program providing a user with information related to the environment where the sensor network observes or is installed.[8]  This allows, among other things, changing environment conditions to be collected in real-time and the operation states of the sensor networks to be continuously monitored, thereby increasing the effectiveness and reliability of the information service, and improving utilization of the sensor network and applications using it.[9]

28.    In addition, the specification of the '232 Patent describes embodiments implementing the technological solution of the invention, including exemplary techniques and improvements to computer systems.  For example, the specification describes that "USN middleware apparatus 40 includes a sensor network abstraction unit 41, a sensor network intelligence unit 42, and a service platform management unit 43.  The sensor network abstraction unit 41 extracts the sensed data from the message received from the gateway 30.  The sensor network intelligence unit 42 extracts the object properties and the environment state information by performing an analysis operation to clean, classify and integrate the sensed data extracted by

---

[8] *See, e.g.*, Ex. 2 at 2:17-3:33.

[9] *Id*. at 3:23-35.

the sensor network abstraction unit 41, and generates conditional events, context aware information, and the other knowledge contents such as circumstantial analysis information. The service platform management unit 43 provides the results processed by the sensor network intelligence unit 42 to the application program 50 in a form suitable for the application program 50. The processed results include both the extracted information including the object properties and the environment state information, and the generated information including conditional events, context aware information, and circumstantial analysis information. The service platform management unit 43 can also provide an information selection and interface function based on a plurality of heterogeneous sensor networks, which is required by the application program 50."[10]

29.     The specification further describes examples of "the sensed data collected by the sensor network 20, the sensed data analyzed by the USN middleware apparatus 40, and conditional events and context aware information generated by the USN middleware apparatus 40."[11]  Additional details and improvements of the invention are described in the '232 Patent, which is incorporated herein by reference.

30.     The '232 Patent was previously asserted in the Amazon Case.

## ACCUSED INSTRUMENTALITIES

31.     Google makes, uses, sells, and/or offers to sell in, and/or imports into the United States systems, products, devices, components, and/or services that infringe one or more claims of the Asserted Patents (the "Accused Instrumentalities").

32.     The Accused Instrumentalities that infringe the '196 Patent include at least systems, products, devices, components, and/or services for speech recognition, including but not

---

[10] *Id*. at 5:1-27.

[11] *Id*. at 5:63-67 and Table 1.

limited to wake word detection, such as:  Google Assistant; Google Home; Google TV; Google Pixel smartphones; Google Pixel smartwatches; Google Pixel wireless earbuds; Google Pixel tablets; Google Nest Smart Home products; Google Hub systems, services, and devices; and Google Smart systems, services, and devices.

33.    The Accused Instrumentalities that infringe the '232 Patent include at least systems, products, devices, components, and/or services implementing sensor nodes and networks, including but not limited to ubiquitous sensor networks, such as:  Google Cloud; Google Cloud Platform; Google Cloud IoT Core; Google Cloud BigQuery; Google Home; Google Home App; Google Nest App; Google Nest products; Fitbit App; Fitbit products; Google smartphones, smartwatches, and tablets; Google Hub systems, services, and devices; and Google Smart systems, services, and devices.

34.    Appendix A provides a non-exhaustive list of Accused Instrumentalities.

### COUNT I – INFRINGEMENT OF THE '196 PATENT

35.    The '196 Patent is valid and enforceable.

36.    Google infringes at least claim 9 of the '196 Patent.  Appendix B details the manner in which the Accused Instrumentalities infringe by way of an exemplary chart as illustrated through a representative example.  On information and belief, infringement of this patent by other Accused Instrumentalities is materially or substantially the same.

### COUNT II – INFRINGEMENT OF THE '232 PATENT

37.    The '232 Patent is valid and enforceable.

38.    Google infringes at least claim 1 of the '232 Patent.  Appendix C details the manner in which the Accused Instrumentalities infringe by way of an exemplary chart as illustrated through a representative example.  On information and belief, infringement of this

patent by other Accused Instrumentalities is materially or substantially the same.

## NOTICE AND INFRINGEMENT

39.    Google had actual and/or constructive prior notice of the Asserted Patents and/or its infringing activities.  For example, in the Amazon Case, the defendants served document and deposition subpoenas on Google, which gave actual notice of the Asserted Patents and details of the infringement allegations, and pointed Google to specific products related to the Asserted Patents.  For another example, the prosecution histories of the following patents assigned to Google cite the '196 Patent or a related patent or published application in its family: US 9,589,564; US 11,942,095; US 9,257,120; US 11,676,608; US 9,318,107; US 9,812,128; US 9,779,735; US 9,972,320; KR 102,241,970; US 10,559,309; KR 102,321,396; US 10,395,650; and US 10,692,496.

40.    To the extent that Google contends it lacked actual knowledge of its infringement of the Asserted Patents before the time of service of this Complaint, it was willfully blind by deliberately avoiding investigating KAIFI's patents or inspecting and/or instructing its employees not to investigate KAIFI's patents.

41.    In addition to having actual and/or constructive pre-suit notice of the Asserted Patents as detailed above, Google has actual notice and knowledge of the Asserted Patents no later than the filing of this Complaint and/or the date this Complaint was served upon Google.

42.    Google has committed and continues to commit acts of direct infringement of the Asserted Patents by making, using, selling, offering to sell, and/or importing in and into the United States, this State, and this District the Accused Instrumentalities.

43.    Google has been and is indirectly infringing the Asserted Patents by actively inducing or contributing to the direct infringement by others, in the United States, this State, and this District.

11

44.     Google has induced and continues to induce its subsidiaries and affiliates, customers, and other third parties, such as resellers and end-consumers, to directly infringe the Asserted Patents by making, using, selling, offering to sell, and/or importing into the United States the Accused Instrumentalities through affirmative acts.

45.     The affirmative acts of inducement by Google include, but are not limited to, any one or a combination of encouraging and/or facilitating third-party infringement through the advertisement, marketing, offering for sale, promoting, and dissemination of the Accused Instrumentalities and their components; and creating and publishing promotional and marketing materials, supporting materials, product manuals, and/or technical support and information relating to the Accused Instrumentalities.

46.     Google took active steps to encourage end users to use and operate the Accused Instrumentalities, despite knowing of the Asserted Patents in the United States, in a manner it knew directly infringes each element of the claims of the Asserted Patents.  Further, Google provided product manuals and other technical information that cause its subscribers, customers, and other third parties to use and to operate the Accused Instrumentalities for their ordinary and customary use, such that these third parties have directly infringed the Asserted Patents, through the normal and customary use of the Accused Instrumentalities.

47.     Google specifically intended and was aware that the ordinary and customary use of the Accused Instrumentalities would infringe the Asserted Patents.

48.     Google knew that the induced conduct would constitute infringement, and intended said infringement at the time of committing the aforementioned acts, such that those acts and conduct have been and continue to be committed with the specific intent to induce infringement, or to deliberately avoid learning of the infringing circumstances at the time those

acts were committed, so as to be willfully blind to the infringement they induced.

49. Google has contributed and continues to contribute to the infringement of its subsidiaries and affiliates, customers, and other third parties, such as resellers and end-consumers of Accused Instrumentalities, to directly infringe the Asserted Patents by offering to sell, selling or importing within or into the United States, this State and this District a component of the Accused Instrumentalities, which constitutes a material part of the invention and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

50. Google knew and knows that the component is especially made or adapted for use in infringement of the Asserted Patents.

51. Google also infringes jointly and/or vicariously. Google engages or participates in a joint enterprise and/or collective conduct of making, using, offering to sell, selling, and/or importing of the Accused Instrumentalities with at least one or more subsidiaries and affiliates, customers, and/or other third parties. Google acts under or provides the direction and/or control of one or more different parties. The infringing acts of subsidiaries, affiliates, customers and other third parties are attributable to Google.

52. As detailed above, Google's conduct constitutes willful infringement of the Asserted Patents. As discussed above, Google has had knowledge of the Asserted Patents and infringement thereof, and yet has deliberately and intentionally continued to infringe with reckless disregard for KAIFI's patent rights. Google's use of the Asserted Patents is not licensed or authorized by KAIFI in any way. Therefore, Google is liable for infringement of the Asserted Patents and that infringement has been and continues to be willful in nature.

53. KAIFI has incurred and will continue to incur substantial damages; and has been and continues to be irreparably harmed by Google's infringement. Therefore, KAIFI is entitled

13

to an injunction, actual and/or compensatory damages, reasonable royalties, pre- and post-judgment interest, enhanced damages, attorney fees, and costs.

54.    KAIFI is in compliance with the marking or notice requirements of 35 U.S.C. § 287 to the extent applicable.  As of the filing of this action, no patentee or licensee has made, offered for sale, or sold within, or imported into, the United States any patented article requiring marking.  The filing of this action constitutes notice.

## **PRAYER FOR RELIEF**

WHEREFORE, KAIFI respectfully requests that this Court:

A.    Enter judgment in favor of KAIFI that each Asserted Patent is valid and enforceable;

B.    Enter judgment that Google has infringed one or more claims of the Asserted Patents, in violation of the United States Code, including, without limitation, 35 U.S.C. § 271;

C.    Enter judgment that Google's infringement is or has been willful;

D.    Award KAIFI damages adequate to compensate KAIFI for Google's past infringement, and any continuing or future infringement through the date such judgment is entered, including prejudgment and post-judgment interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

E.    Increase damages awarded to KAIFI in this case to three times the damages amount found by the jury or assessed by the Court pursuant to 35 U.S.C. § 284;

F.    Declare this case exceptional and award KAIFI its reasonable attorney fees and costs incurred in bringing and prosecuting this action pursuant to 35 U.S.C. § 285;

G.    Enjoin Google and its subsidiaries, and their officers, agents, servants, employees, and all persons in active concert with any of the foregoing from further infringement of the Asserted Patents, or if its infringement is not enjoined, that Google be ordered to pay KAIFI ongoing royalties for any post-judgment infringement of the Asserted Patents; and

H.    Grant KAIFI all such other relief as the Court deems just and reasonable.

## DEMAND FOR JURY TRIAL

KAIFI demands a jury trial on all issues so triable pursuant to Federal Rule of Civil

Procedure 38 and other applicable law.

Date:  November 4, 2025                    */s/ Charles Ainsworth*

Charles Ainsworth
(Texas Bar No. 00783521)
charley@pbatyler.com
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 418
Tyler, Texas 75702
Telephone: (903) 531-3535

Andrew Y. Choung
(admitted in E.D. Texas)
achoung@nixonpeabody.com
Jennifer Hayes
(admitted *Pro Hac Vice*)
jhayes@nixonpeabody.com
NIXON PEABODY LLP
300 S. Grand Avenue, Suite 4100
Los Angeles, CA 90071
Telephone: (213) 629-6000
Facsimile: (213) 629-6001

Daniel J. Schwartz
(admitted in E.D. Texas)
djschwartz@nixonpeabody.com
NIXON PEABODY LLP
70 W. Madison Street, Suite 5200
Chicago, IL 60602
Telephone: (312) 977-4400
Facsimile: (844) 560-8137

*Attorneys for Plaintiff KAIFI LLC*

16

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 4th day of November, 2025, with a copy of this document via the Court's CM/ECF system.

/s/ *Charles Ainsworth*
CHARLES AINSWORTH

17