PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| KAIFI LLC,<br><br>   *Plaintiff*,<br> v.<br><br>GOOGLE LLC,<br><br>   *Defendant*. | Case No. 1:25-CV-01370-ADA<br><br>Jury Trial Demanded<br><br>█████████████ |

**DEFENDANT GOOGLE LLC'S OPPOSED MOTION TO TRANSFER VENUE TO THE
<u>NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)</u>**

**PUBLIC VERSION**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................................................1

II.  FACTUAL BACKGROUND.......................................................................................1

    A.  Plaintiff's Infringement Allegations ............................................................1

    B.  Google's Likely Witnesses and Evidence Are Concentrated in NDCA..................3

    C.  Many Likely Third-Party Witnesses Are Located in NDCA...............................4

    D.  Plaintiff's Witnesses and Evidence Are Located Outside WDTX. .........................4

III.  LEGAL STANDARD.................................................................................................5

IV.  ARGUMENT..............................................................................................................6

    A.  The Convenience of Witnesses Strongly Favors Transfer.......................................6

    B.  The Local Interests Strongly Favor Transfer. ......................................................11

    C.  The Availability of Compulsory Process Favors Transfer. ...................................12

    D.  The Relevant Sources of Proof Strongly Favor Transfer......................................13

    E.  The Remaining Factors Are Neutral. ..................................................................13

        1.  The practical considerations are neutral. ....................................................13

        2.  The court congestion factor should be accorded no weight.......................15

        3.  The remaining public interest factors are neutral. ....................................15

    F.  The Balance of Factors Strongly Favors Transfer. ...............................................15

V.  CONCLUSION...........................................................................................................15

PUBLIC VERSION

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*3D Surfaces, LLC v. Dell Techs. Inc.*,
   No. :21-CV-01107-ADA, 2022 WL 3695483 (W.D. Tex. Aug. 25, 2022)...........................11

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010)....................................................................................12

*In re Apple Inc.*,
   No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ................................................15

*In re Apple Inc.*,
   No. 2022-137, 2022 WL 1676400 (Fed. Cir. May 26, 2022)...................................................11

*In re Apple*,
   979 F.3d 1332 (Fed. Cir. 2020)...............................................................................10, 11, 12

*In re Apple, Inc.*,
   581 F. App'x 886 (Fed. Cir. 2014) .............................................................................13

*In re Chamber of Com. of United States of Am.*,
   105 F.4th 297 (5th Cir. 2024) ...................................................................................5, 11

*In re Clarke*,
   94 F.4th 502 (5th Cir. 2024) ...........................................................................................6

*In re DISH Network LLC*,
   No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)...................................................13

*EcoFactor, Inc. v. Google LLC*,
   No. W-22-CV-00032-ADA, 2022 WL 17169178 (W.D. Tex. Nov. 1, 2022).........................15

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009)............................................................................1, 6, 9, 13

*In re Google Inc.*,
   No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ...................................................14

*In re Google LLC*,
   58 F.4th 1379 (Fed. Cir. 2023) ....................................................................................15

*In re Google LLC*,
   No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ....................................10, 11, 12

*In re Google LLC*,
No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ...................................................13

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)...........................................................................................11, 12

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ...........................................................................................12, 15

*KAIFI LLC v. Apple Inc.*,
No. 1:25-cv-1372 (W.D. Tex.)...................................................................................................3

*In re NetScout Sys., Inc.*,
No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021)....................................................14

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009)..............................................................................................1, 6

*In re Samsung Elecs. Co.*,
2 F.4th 1371 (Fed. Cir. 2021) ................................................................................................6, 13

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) ....................................................................................................10

*Topia Tech., Inc. v. Dropbox, Inc.*,
No. W-21-CV-01373-ADA, 2023 WL 1978909 (W.D. Tex. Feb. 13, 2023).........................15

*In re Toyota Motor Corp.*,
747 F.3d 1338 (Fed. Cir. 2014)................................................................................................15

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008).................................................................................................15

*In re VirtaMove, Corp.*,
No. 2025-130, 2025 WL 2618803 (Fed. Cir. Sept. 11, 2025) .................................................11

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) .....................................................................................................9

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc) ...............................................................................5, 6, 9

*Zentian Ltd. v. Apple, Inc.*,
No. W-22-CV-00122-ADA, 2023 WL 4167746 (W.D. Tex. June 13, 2023) .........................15

*In re Zimmer Holdings, Inc.*,
609 F.3d 1378 (Fed. Cir. 2010)................................................................................................12

**FEDERAL STATUTES**

28 U.S.C. § 1404 ............................................................................................................1, 5, 6

35 U.S.C. § 101 ..................................................................................................................3

**OTHER AUTHORITIES**

'196 Patent ................................................................................................... 1, passim

'232 Patent ................................................................................................... 1, passim

**PUBLIC VERSION**

## I.    INTRODUCTION

Defendant Google LLC moves pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Northern District of California ("NDCA") and requests oral argument on this motion.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Here, the accused functionalities were designed or developed predominantly in NDCA, where Google is headquartered. The vast majority of the Google engineers with relevant knowledge of the accused functionalities and who would be likely witnesses are located in NDCA. The majority of relevant technical documents and source code were also created and maintained in NDCA. Thus, NDCA has a significant local interest in adjudicating this case.

The Western District of Texas ("WDTX"), by contrast, has no material connection to this dispute. None of the likely witnesses with knowledge of the accused functionalities are located here. Moreover, Plaintiff KAIFI LLC has no discernable ties to WDTX. It does not employ any individuals in this District; rather, it employs a manager in NDCA. And it acquired the asserted patents from entities located in South Korea, where the named inventors appear to reside.

In sum, each of the § 1404 factors either strongly favors transfer or is neutral, while none favors WDTX. Given these facts, this case should be transferred to NDCA. *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (directing transfer as "most witnesses and evidence [were] closer to the transferee venue with few or no convenience factors favoring the [transferor] venue").

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Infringement Allegations

Plaintiff alleges that Google has infringed U.S. Patent Nos. 8,930,196 ("'196 Patent") and 8,040,232 ("'232 Patent") (collectively, the "Asserted Patents"). The '196 Patent claims generally relate to a system or method for speech recognition that detects a preset call command in a noisy

environment before performing continuous speech recognition to recognize a subsequent command. *See, e.g.*, '196 Patent at cl. 1, 9, 17. Plaintiff's initial infringement contentions list over 65 "accused instrumentalities" for the '196 Patent, including various Google Home/Nest products, Pixel phones and watches, and other devices with Google Assistant or Gemini. Ex. 1 at App'x A. The primary accused feature in those instrumentalities appears to be Google's hotword (or "wake word") detection feature, which can detect a known phrase (e.g., "Ok Google" or "Hey Google") in a stream of audio. *See id.* at B-23–B-34, B-45–B-85, B-105–B-113; *see also* Joglekar Decl. ¶ 4.

The claims of the '232 Patent generally relate to middleware in the context of a heterogeneous sensor network that analyzes sensed data from the network in order to provide a user with information related to the environment. *See, e.g.*, '232 Patent at cl. 1, 6, 10. Plaintiff lists over 160 "accused instrumentalities" in its infringement contentions for the '232 Patent, but it fails to map any of those across all of the limitations for any asserted claim. Ex.[1] 1 at App'x A, C; *see* Standing OGP–Patent Cases § II.2 (contentions must set forth "where in the accused product(s) each element of the asserted claim(s) are found"). The accused functionalities for which Plaintiff comes closest to trying to map across all limitations of a claim are certain smart/intelligent features of the Google Home ecosystem, Pixel phones, Pixel watches, Fitbit devices, and certain Google Cloud offerings like Cloud IoT Core, Google Distributed Cloud – Connected ("GDC Connected"), and Manufacturing Data Engine ("MDE"). *See* Ex. 1 at App'x C. Thus, for purposes of this motion, Google focuses on those features as the "charted" accused functionalities.[2]

---

[1] Unless otherwise noted, Exhibits are attached to the Ho Declaration, submitted herewith.

[2] To be clear, Plaintiff's infringement contentions are deficient even as to these functionalities. As Google has raised in a deficiency letter, Plaintiff's contentions as to both Asserted Patents fail to chart even a single instrumentality across any asserted claim and improperly mixes and matches instrumentalities across limitations. *See* Ex. 2. Google nonetheless focuses, for purposes of this motion, on the "charted" accused functionalities because the contentions regarding a slew of other instrumentalities are so conclusory and unclear that Google cannot even discern what other

**PUBLIC VERSION**

On the same day that Plaintiff filed this case, it also sued Apple Inc. in this District, asserting infringement of the '196 Patent only (and not the '232 Patent). *See KAIFI LLC v. Apple Inc.*, No. 1:25-cv-1372 (W.D. Tex.). Plaintiff had not previously asserted the '196 or '232 Patent in this District. On November 18, 2025, Google moved to dismiss the '232 Patent for claiming ineligible subject matter under 35 U.S.C. § 101. *See* Dkt. 29.

> **B.      Google's Likely Witnesses and Evidence Are Concentrated in NDCA.**

Google has been headquartered in NDCA since 1998. Nearly all of the Google witnesses with the most relevant technical knowledge about the accused functionalities are located in or near NDCA. As described in more detail below, Google has identified fifteen Google employees who are likely to be witnesses in this litigation. Nine of them are located in NDCA, while two are in San Diego, California, one is in Pasadena, California, one is in Seattle, Washington, and two are in Europe. Joglekar Decl. ¶¶ 2, 5; Midi Decl. ¶ 2; Vitus Decl. ¶¶ 2, 4; Coolidge Decl. ¶ 2; Hettrick Decl. ¶ 2; Klemm Decl. ¶ 2. Google is unaware of any Google employee likely to be a witness who is located in WDTX.[3] Moreover, as a matter of practice, technical documents regarding Google's products and services are normally created and maintained by the employees working on those products and services. Joglekar Decl. ¶ 7; Midi Decl. ¶ 7; Vitus Decl. ¶ 5; Coolidge Decl. ¶ 4; Hettrick Decl. ¶ 4; Klemm Decl. ¶ 4. Thus, the majority of the relevant documents regarding the charted accused functionalities are created and maintained in the Bay Area.

---

functionalities are being accused of infringement. *See id.* at 2.

[3] Although one product manager for GDC Connected works out of Austin, Texas, he primarily works on ███████████████████████████████████████. Coolidge Decl. ¶ 3. Another individual, Ian Coolidge, is ultimately responsible for developing and implementing ███████████████████████████████. *Id.* Google does not anticipate that the former individual would be a trial witness for either party. Google also has employees in Austin, Texas, with ██████████████████ positions (as it does in the Bay Area, as well), but again Google does not anticipate that they would be trial witnesses called by either party.

---

## C.    Many Likely Third-Party Witnesses Are Located in NDCA.

A number of third-party witnesses as well as other relevant evidence will be involved in this case. Although Google's investigation is at its early stages, there are likely third-party witnesses with knowledge of prior art systems in NDCA. For example, Eric Hulteen, who lives in Carmel Valley, California (in NDCA), authored a paper relating to an early speech recognition system that is prior art to the '196 Patent.[4] Exs. 3–4. With respect to the '232 Patent, there were at least prior art Wireless Sensor Network systems that researchers at the University of California Berkeley (in NDCA) were testing and deploying in the early 2000s, such as for structural health monitoring of the Golden Gate Bridge. Exs. 5–6. Out of three primary researchers who worked and published on these systems, at least David Culler and James Demmel appear to still live in the Bay Area. Exs. 9–12.[5]

## D.    Plaintiff's Witnesses and Evidence Are Located Outside WDTX.

Neither Plaintiff nor the named inventors of the Asserted Patents have any known connection to WDTX. Plaintiff is registered to do business in Texas, with its principal place of business at 5700 Tennyson Pkwy, Suite 300, Plano, Texas. ECF 18 at 1. That address is in the Eastern District of Texas—not WDTX. And even that connection appears to have been manufactured for purposes of creating an artificial tie to Texas. Dozens of entities use the exact same postal address as Plaintiff as their "principal place of business." Ex. 13. Indeed, the address appears to be a shared, coworking space that can be rented out as a "virtual office." Exs. 14–15.

There is no evidence that Plaintiff engages in any business other than patent assertion. Nor is there any evidence that it has any employees located in WDTX. To the contrary, Plaintiff appears

---

[4] Another person who worked on that system, Robert Strong, appears to be deceased.  Exs. 64-65.

[5] The third researcher, Sukun Kim, appears to either live in Korea or the Bay Area. Exs. 7–8.

to employ a "Manager" named Hanbum Cho, *see* Ex. 21, who resides in the Bay Area, Exs. 22–23. And the named inventors of the Asserted Patents were affiliated with Korean entities and appear to still reside in South Korea. Exs. 24–31. There is no evidence that any individual involved in the development of the Asserted Patents is associated with Plaintiff or resides in WDTX.

Furthermore, public information reports indicate that Plaintiff's parent corporation, Golden Wave Partners Co. Ltd. ("Golden Wave"), Dkt. 4, also has no connection to WDTX and has instead created an artificial tie to Texas. From 2020 to early 2025, Golden Wave listed an address in South Korea as its mailing address. Exs. 16–21. It was not until earlier this year that it changed its mailing address to the same shared, coworking space as Plaintiff at 5700 Tennyson Pkwy, Suite 300, Plano, Texas—just six months before this lawsuit was filed. *Id.* In short, Plaintiff has no ties to WDTX.

## III.    LEGAL STANDARD

To establish good cause for 28 U.S.C. § 1404(a) transfer, "a movant must show (1) that the marginal gain in convenience will be significant, and (2) that its evidence makes it plainly obvious . . . that those marginal gains will actually materialize in the transferee venue." *In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 304 (5th Cir. 2024) (alterations and emphasis omitted); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*") (holding that good cause is shown by "clearly demonstrat[ing] that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice'") (second alteration in original). Courts in the Fifth Circuit weigh eight private and public interest factors:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. . . . [5] the administrative difficulties flowing from court congestion; [6] the local interest in having localized interests decided at home; [7] the familiarity of the forum with the law that will govern the case; and [8] the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Volkswagen II*, 545 F.3d at 315. "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo*, 589 F.3d at 1198.

## IV.    ARGUMENT

The Court should transfer this action to NDCA where it can be more conveniently litigated. This case could have been brought in NDCA where Google has its principal place of business. Accordingly, the transfer analysis turns on weighing the private and public interest factors, which strongly favor transfer.

### A.    The Convenience of Witnesses Strongly Favors Transfer.

The convenience of witnesses is "probably the single most important factor in [the] transfer analysis." *In re Genentech*, 566 F.3d at 1343. Courts "must consider" the convenience of possible party witnesses. *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021). The Fifth Circuit uses the distance that a witness must travel to a particular forum as a proxy for cost and inconvenience. *See Volkswagen II*, 545 F.3d at 317 ("[A]dditional distance means additional travel time," which "increases the probability for meal and lodging expenses" and "overnight stays.") (internal quotation marks omitted); *In re Clarke*, 94 F.4th 502, 514 & n.20 (5th Cir. 2024) (recognizing the "external costs on witnesses"). *Volkswagen II* thus held that "[w]hen the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." 545 F.3d at 317 (internal quotation marks omitted).

This factor strongly favors transfer to NDCA, where the vast majority of likely witnesses are located. The Google employees with the most relevant knowledge of the design, research, development, and integration of the accused hotword detection feature for the '196 Patent and of

**PUBLIC VERSION**

the charted accused functionalities for the '232 Patent (*see* p. 2 n.2, *supra*) work primarily in NDCA, with three elsewhere in California; one in Seattle, Washington; and two in Europe. The likely witnesses for the '196 Patent are:[6]

- **Taral Joglekar** (Mountain View, CA): Senior Staff Software Engineer who is an engineering lead and has knowledge regarding the ███████████████████████ that supports Google's hotword detection feature, as well as knowledge of ███████████████ ████████████████;

- **Alexander Gruenstein** (Mountain View, CA): Senior Director of Engineering who oversaw ████████████████████ until ███████████, led development of various Google Assistant features, including ████████████████████████████████████ ████████████████, and currently oversees the ████████████████ team;

- **Kurt Partridge** (Mountain View, CA): Software Engineer Manager with oversight and knowledge regarding development and maintenance of ████████████████████;

- **Christopher Haire** (Mountain View, CA): Principal Product Manager, and former Product Lead for Google Assistant Speech, with responsibility and knowledge about the development and maintenance of Google's speech recognition technology, including ████████████ ███████████████████████████████████;

- **Dharmesh Mokani** (Mountain View, CA): Software Engineer Manager who is an engineering lead and has knowledge regarding ████████████████████████████ ██████████████████████████████████████████████; and

---

[6] Plaintiff's infringement contentions cite four publications that list some authors who were affiliated with Google. *See, e.g.*, Ex. 1 at B-105–B-110 & nn. 104, 105, 109, 110. Aside from Mr. Gruenstein, discussed below, and Petar Aleksic (New York, New York) ████████████████, none of those authors who still work at Google currently has direct responsibility for the development and integration of ████████████████████████. Joglekar Decl. ¶ 6.

**PUBLIC VERSION**

- **Jordan Werthman** (Seattle, WA): Staff Software Engineer and Team Lead who is responsible for and has knowledge regarding █████████████████████████ ████████████████████████████████████████ .

The likely witnesses for the '232 Patent are:

- **Daniele Midi** (San Francisco, CA): Software Engineer with oversight and knowledge regarding the development and maintenance of functionalities in ████████████ ████████████████████████████████████████ ;

- **Debbie Vitus** (Mountain View, CA): Software Engineer Manager and Tech Lead Manager with oversight and knowledge regarding the research and development of ███████████ ████████████████████████████████████████ ███████████████ ;

- **Matt Wimmer** (San Diego, CA): Software Engineer Manager with oversight and knowledge about the development and integration of algorithms that ████████████████ ████████████████████████████████████████ ;

- **Papitha Nagarajan** (Mountain View, CA): Software Engineer Manager with responsibility and knowledge of R&D for certain ██████████████████████████████ ;

- **Cristian Condurache** (Bucharest, Romania): Software Engineer Manager with oversight and knowledge about the implementation and maintenance of ████████████████████ ████████████████████████████ ;

- **Tajinder Gadh** (Mountain View, CA): Principle Software Engineer and Tech Lead Manager for the ███████████ team who supervises and knows about the design, development, and integration of features related to ██████████████████████████ ;

- **Ian Coolidge** (San Diego, CA): Senior Staff Software Engineer with oversight and knowledge

about the development, implementation, and maintenance of ████████████████████

████████████████████████████████████████████████████████████████ ;

- **Alison Hettrick** (Pasadena, CA): Director of Solutions who manages the team responsible for ████ and is familiar with how it uses or integrates ██████████████████████████ ████████████████████████████ ; and

- **József Klemm** (Budapest, Hungary): Senior Software Engineer who oversaw and has knowledge about the development and maintenance of ████████████ .

Joglekar Decl. ¶¶ 2, 4–5; Midi Decl. ¶¶ 2, 5; Vitus Decl. ¶¶ 2, 4; Coolidge Decl. ¶¶ 2–3; Hettrick Decl. ¶¶ 2-3; Klemm Decl. ¶ 2. For the vast majority of these Google witnesses and many of their team members, "it is more convenient [] to testify at home" in NDCA. *See Volkswagen II*, 545 F.3d at 317; *see* Joglekar Decl. ¶ 5 (location of Google team members); Midi Decl. ¶¶ 4–5 (same); Vitus Decl. ¶ 5 (same); Coolidge Decl. ¶ 3 (same). Traveling to Austin from the Bay Area requires at least 3.5 hours of flight time each way, plus additional driving time. Exs. 32, 34. Long travel time means witnesses will inevitably need to stay in Austin overnight if they were to testify at trial, which would significantly disrupt their professional and personal commitments while "being away from work, family, and community." *Volkswagen II*, 545 F.3d at 317. If this case is transferred to NDCA, the vast majority of relevant Google witnesses can practically testify "at home," easily traveling between the court and their homes within "30 minutes [to] an hour," as opposed to days. *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004) ("*Volkswagen I*"); *see* Ex. 33. Even for Google witnesses in San Diego, Pasadena, and Seattle, NDCA is significantly closer and would require less travel time. Exs. 41-52. There are also significantly more direct flights. Exs. 35-40.

While Google witnesses are the most relevant to the transfer analysis, *In re Genentech* 566 F.3d at 1345, Plaintiff also has no likely witnesses in WDTX. Plaintiff does not appear to have any

**PUBLIC VERSION**

employees in WDTX. Instead, its "Manager" appears to be in the Bay Area (NDCA). Exs. 21-23.

With respect to the two Google witnesses and any Plaintiff witnesses in foreign countries, Federal Circuit "cases have emphasized that when there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). While witnesses located far from either forum may still be inconvenienced by one forum over the other, *see In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023), they "will likely have to leave home for an extended period" whether or not the case is transferred, and thus would "only be slightly more inconvenienced," *In re Apple*, 979 F.3d 1332, 1342 (Fed. Cir. 2020) (internal quotation marks omitted). These include, for example, any named inventor in South Korea who may be a willing witness and the two Google employees discussed above (Mr. Condurache and Mr. Klemm) in Europe. If anything, the greater availability of flights to Bay Area airports makes NDCA more convenient for all of them. South Korea is also closer to NDCA than WDTX, and there are direct flights to NDCA while there are none to Austin. Exs. 53–55. While Mr. Klemm and Mr. Condurache would have to travel a further distance to NDCA than to WDTX, there are many more single-layover options to NDCA. Exs. 56–63. Therefore, the convenience of these foreign witnesses does not tip the scale to WDTX. *See In re Apple*, 979 F.3d at 1341 (rejecting district court giving more weight to two witnesses who would need to travel a significant distance to either forum at the expense of several witnesses in transferee forum).

Because nearly all of the likely witnesses reside in NDCA or would find it more convenient, and none reside in WDTX or would find it more convenient, the convenience of the witnesses—the most important factor—overwhelmingly favors transfer. *See In re VirtaMove, Corp.*, No. 2025-130, 2025 WL 2618803, at *1 (Fed. Cir. Sept. 11, 2025) (transfer warranted when it "would allow

a significant number of witnesses to testify near home" rather than "require all witnesses travel a significant distance"); *In re Google*, 2021 WL 4427899, at \*4 (same).

## B.   The Local Interests Strongly Favor Transfer.

NDCA has a localized interest in this dispute because "the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). Local interests are present when "the citizens of the forum have a sufficient interest in the controversy to justify burdening them with jury duty." *In re Chamber of Com.*, 105 F.4th at 308. The Federal Circuit "accord[s] significant weight under this factor to the location where the accused product or functionality was 'designed, developed, and tested'" and "no weight to the location of the sale of an accused product where that product is offered nationwide." *3D Surfaces, LLC v. Dell Techs. Inc.*, No. :21-CV-01107-ADA, 2022 WL 3695483, at \*9 (W.D. Tex. Aug. 25, 2022) (quoting *In re Apple*, 979 F.3d at 1345); *see In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at \*2 (Fed. Cir. May 26, 2022) ("clear abuse of discretion" to give weight to general presence in district without "a connection to the locus of the events giving rise to the dispute").

Google has significant ties to NDCA, where it is headquartered. Events that gave rise to this suit predominantly occurred there, as the hotword detection feature accused of infringing the '196 Patent was designed or developed primarily in NDCA, Joglekar Decl. ¶ 5, and many of the charted accused functionalities for the '232 Patent—such as for Google Home/Nest, Pixel phones and watches, Fitbit devices, and GDC Connected—were also designed or developed primarily in NDCA. *See* Midi Decl. ¶¶ 3, 5–6; Vitus Decl. ¶ 4; Coolidge Decl. ¶ 3.

The local interests of WDTX, on the other hand, are not implicated. Any connections Google has with WDTX are not material to this litigation: none of the likely witnesses for the

charted accused functionalities is here. *See In re Google*, 2021 WL 4427899, at *6 (local interest favored transfer when accused products "were designed and developed in [NDCA] and are not related to Google's presence in Texas"). Plaintiff's infringement contentions for the '232 Patent make a passing reference to Google servers spread across the U.S., including in Dallas, Texas. But Plaintiff has not mapped any functionality of such servers, let alone the Dallas servers, to particular limitations. Even if the Dallas servers were relevant, Dallas is not in WDTX, so they cannot create a local interest here. *See In re Apple*, 979 F.3d at 1346 (declining to give weight to servers in Dallas). And geographically diffuse events, such as alleged infringement nationwide, "do[] not give rise to a substantial interest in any single venue." *In re Hoffman-La Roche*, 587 F.3d at 1338.

Further, Plaintiff's ties to WDTX are nonexistent. Even its ties to Texas more broadly appear to have been manufactured for litigation. Multiple entities use the exact same postal address as Plaintiff as their principal place of business. Indeed, Plaintiff's "principal place of business" is a shared, coworking office space that is advertised as a "virtual office." Ex. 14; *see In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (plaintiff's presence in Texas "appear[ed] to be recent, ephemeral, and an artifact of litigation" when it shared an office space); *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021) (according "little or no weight" to "a party's recent and ephemeral presence . . . , such as by establishing an office in order to claim a presence in the district for purposes of litigation"). Accordingly, this factor also strongly favors transfer.

### C.    The Availability of Compulsory Process Favors Transfer.

A court's ability to compel testimony and document production through its subpoena power is an "important factor" in the transfer analysis. *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010). "[W]hen there is no indication that [the] witness is willing," the Court must presume its subpoena power will be necessary to secure the witness's attendance. *In re DISH*

**PUBLIC VERSION**

*Network LLC*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than . . . in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

Here, many likely third-party witnesses are in NDCA. This includes prior art witnesses, discussed above. *See* § II.C, *supra*. Because these potential witnesses reside in NDCA, "transfer ensures that the transferee court could compel these individuals to appear." *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021). Even if these third parties are ultimately willing witnesses, NDCA would clearly be more convenient for them under the willing-witnesses factor.

Google is not aware of any relevant third parties in WDTX that are likely to be trial witnesses. The Asserted Patents were not developed, prosecuted, or commercialized in WDTX, and the named inventors appear to live in South Korea. To the extent any named inventors are or become willing witnesses, traveling to NDCA would likely be easier for them, as discussed above.

## D.    The Relevant Sources of Proof Strongly Favor Transfer.

Because "the bulk of relevant evidence usually comes from the accused infringer, . . . the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d at 1345. Beyond the physical location of documents, "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval," are also relevant. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). This factor likewise strongly favors transfer. The majority of the relevant documents are created and maintained in the Bay Area. *See* § II.B, *supra*; Joglekar Decl. ¶ 7; Midi Decl. ¶ 7; Vitus Decl. ¶ 5; Coolidge Decl. ¶ 4.

## E.    The Remaining Factors Are Neutral.

### 1.    The practical considerations are neutral.

As a practical matter, proceeding in NDCA would make trial easier and less expensive.

**PUBLIC VERSION**

Google's witnesses would not need to travel to WDTX for pre-trial and trial proceedings. Transfer would thus decrease the disruption and expense of litigation. This case is also in its early stages, so transferring it would not waste judicial effort. NDCA is fully capable of handling the issues in this case, and there is no unique knowledge here that would be lost due to transfer.

This Court should not allow Plaintiff's pending case against Apple (No. 1:25-cv-1372) to "automatically tip[] the balance" against transfer. *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021). The Apple suit "involve[s] [a] different defendant[] and different accused products" and only partial overlap of an asserted patent, so it is "likely to involve significantly different discovery and evidence." *Id.* Furthermore, the Apple suit is in its earliest stages—the parties have not filed any substantive motions, and, like here, there has been no claim construction briefing. Any judicial economy hinging on the Apple suit is speculative at this point, as it would require assuming that both suits are still pending far in the future. Under these circumstances, any judicial economy considerations would be "insufficient to outweigh the clear benefits of transfer." *Id.*; *see also In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017) (finding clear error in "putting aside" Google's strong presence in transferee district "while allowing the co-pending litigation to dominate the analysis"). Doing so would create perverse incentives for plaintiffs to use co-pending litigation to immunize against transfer. *See id.* at *3. Even where the Court has found judicial economy considerations to weigh against transfer due to extensive overlap or prior court experience with asserted patents or technology (not the case here), it has nonetheless granted transfer when, as here, the willing-witness, compulsory process, sources of proof, and/or local interest factors favor transfer. *See, e.g.*, *Zentian Ltd. v. Apple, Inc.*, No. W-22-CV-00122-ADA, 2023 WL 4167746, at *9–11 (W.D. Tex. June 13, 2023); *Topia Tech., Inc. v. Dropbox, Inc.*, No. W-21-CV-01373-ADA, 2023 WL

1978909, at *8–10 (W.D. Tex. Feb. 13, 2023); *EcoFactor, Inc. v. Google LLC*, No. W-22-CV-00032-ADA, 2022 WL 17169178, at *10–14 (W.D. Tex. Nov. 1, 2022).

### 2. The court congestion factor should be accorded no weight.

The factor of court congestion is neutral. The Federal Circuit has repeatedly noted that WDTX and NDCA "show no significant differences in caseload or time-to-trial statistics.'" *See In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021). Moreover, this factor is given the least weight because it is the "most speculative." *In re Juniper*, 14 F.4th at 1322. And given that Plaintiff is a non-practicing entity, this factor should be given no weight in this case. *See In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023).

### 3. The remaining public interest factors are neutral.

The remaining public interest factors are also neutral. Familiarity with the governing law is neutral, as both NDCA and WDTX are well versed in patent law. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). There do not appear to be any issues of conflict of laws or application of foreign law. The last public interest factor is therefore also neutral.

### F. The Balance of Factors Strongly Favors Transfer.

Each private or public interest factor either strongly favors transfer (witness convenience, compulsory process, sources of proof, and local interests) or is neutral (all other factors). "With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is '*clearly* more convenient.'" *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014).

## V.    CONCLUSION

For the foregoing reasons, the Court should transfer the case to NDCA.

**PUBLIC VERSION**

DATED: December 19, 2025

Respectfully submitted,

/s/ Vincent Y. Ling

Vincent Y. Ling (*pro hac vice*)
Peter E. Gratzinger (*pro hac vice*)
Rebecca Ho (*pro hac vice*)
Jacob Todd (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Fax: (213) 687-3702
vinny.ling@mto.com
peter.gratzinger@mto.com
rebecca.ho@mto.com
jacob.todd@mto.com

Nathaniel St. Clair, II
Texas State Bar No. 24071564
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-6000
Fax: (214) 953-5822
nstclair@jw.com

Kevin Han Yang (*admitted to practice before the Western District of Texas*)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Fax: (415) 512-4077
kevin.yang@mto.com

***Attorneys for Defendant Google LLC***

PUBLIC VERSION

## CERTIFICATE OF SERVICE

I hereby certify that Plaintiff's counsel of record is being served with a copy of the foregoing motion via email at achoung@nixonpeabody.com, djschwartz@nixonpeabody.com, jhayes@nixonpeabody.com, and charley@pbatyler.com on December 19, 2025.

*/s/ Vincent Y. Ling*

Vincent Y. Ling

## CERTIFICATE OF CONFERENCE

I hereby certify that on December 19, 2025, pursuant to Local Rule CV-7(g), I met and conferred with counsel for Plaintiff, who indicated that Plaintiff is opposed to the relief requested.

*/s/ Vincent Y. Ling*

Vincent Y. Ling