# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

KAIFI LLC,

        *Plaintiff*,

    v.

GOOGLE LLC,

        *Defendant*.

Case No. 1:25-cv-01370-ADA

JURY TRIAL DEMANDED

## ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Pursuant to Federal Rules of Civil Procedure 12 and 13, Defendant Google LLC ("Google") hereby submits its Answer to Plaintiff's Amended Complaint for Patent Infringement (Dkt. 18) ("Complaint") and states its affirmative defenses. Each paragraph of the Answer below corresponds to the corresponding numbered or lettered paragraph of the Complaint. Except as expressly admitted below, Google denies every allegation set forth in the Complaint.

## PARTIES[1]

1.      Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1, and, on that basis, denies them.

2.      Google admits that it is a Delaware limited liability company with its headquarters at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google admits it maintains an office at 500 West 2nd Street, Austin, Texas 78701. Google admits that its registered agent in Texas is Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company,

---

[1] The headings from the Complaint are quoted for convenience but are not allegations to which a response is required. However, to the extent a response is required, Google denies the statements and characterization in such headings.

211 East 7th Street, Suite 620, Austin, TX 78701. Except as expressly admitted herein, Google denies each and every allegation of paragraph 2.

## JURISDICTION AND VENUE

3.      Google admits that the Complaint purports to arise under the patent laws of the United States in Title 35 of the United States Code, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

4.      Google admits that this Court has subject-matter jurisdiction over patent law claims arising under 28 U.S.C. §§ 1331 and 1338(a). Google lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 4 and, on that basis, denies them.

5.      Google does not contest personal jurisdiction in the Western District of Texas solely for the purposes of this action. Except as expressly admitted herein, Google denies each and every allegation of paragraph 5.

6.      Google does not contest personal jurisdiction in the Western District of Texas solely for the purposes of this action. Google denies that it has committed or is committing any acts of infringement in this District or any other District. Except as expressly admitted herein, Google denies each and every allegation of paragraph 6.

7.      Google admits that it has transacted business in the Western District of Texas and maintains offices in this District. Google denies that it has committed or is committing any acts of infringement as alleged by Plaintiff in this District or any other District. Google does not contest that it is subject to personal jurisdiction in the Western District of Texas solely for the purposes of this action. Except as expressly admitted herein, Google denies each and every allegation of paragraph 7.

8.      Google admits that it maintains offices in this District. Google does not contest, for purposes of this action only, that venue is proper in this District, but Google denies that this District is a convenient forum for this dispute or in the interests of justice under 28 U.S.C. § 1404(a). Google denies that it has committed or is committing any acts of infringement as alleged by Plaintiff in this or any other District. Except as expressly admitted herein, Google denies each and every allegation of paragraph 8.

9.      Google admits that it conducts business in the United States and in this District. Google denies that its products or services infringe directly, contributorily, by inducement, or otherwise any valid and enforceable claim of the asserted patents in this case. Except as expressly admitted herein, Google denies each and every allegation of paragraph 9.

10.      Google admits that it conducts business in the United States and in this District. Google denies that its products or services infringe directly, contributorily, by inducement, or otherwise any valid and enforceable claim of the asserted patents in this case as alleged by Plaintiff in this or any other District. Except as expressly admitted herein, Google denies each and every allegation of paragraph 10.

11.      Google admits that the www.google.com website is a Google website and that said website is accessible in this District. Google denies any remaining allegations of paragraph 11.

12.      Google admits that it maintains offices in this District. Except as expressly admitted herein, Google denies each and every allegation of paragraph 12.

13.      This paragraph consists of argument and legal conclusions to which no response is required. To the extent a response is required, Google admits that it maintains offices at 500 West 2nd Street, Austin, Texas 78701; 901 East 5th Street, Austin, Texas 78702; and 601 West 2nd Street, Austin, Texas 78701. To the extent the allegations in paragraph 13 purport to describe one

or more documents or webpages, Google states that those documents are the best source of their full content and context. Except as expressly admitted herein, Google denies each and every allegation of paragraph 13.

14.     Google admits that it has paying customers in this District. Google denies that its products or services infringe directly, contributorily, by inducement, or otherwise any valid and enforceable claim of the asserted patents in this case. Except as expressly admitted herein, Google denies each and every allegation of paragraph 14.

15.     This paragraph consists of argument and legal conclusions to which no response is required. To the extent that a response is required, Google does not contest, for purposes of this action only, that venue is proper in this District or that it is subject to personal jurisdiction in the Western District of Texas solely for the purposes of this action, but Google denies that this District is a convenient forum for this dispute or in the interests of justice under 28 U.S.C. § 1404(a). Google denies the remaining allegations of paragraph 15.

## **ASSERTED PATENTS**[2]

16.     Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16 and, on that basis, denies them.

17.     This paragraph consists of argument and legal conclusions to which no response is required. To the extent a further response is required, Google admits that the '196 patent is entitled "System for Detecting Speech Interval and Recognizing Continuous Speech in a Noisy Environment Through Real-Time Recognition of Call Commands" and bears an issue date of January 6, 2015. Google admits that the '196 patent purports to name Heui-Suck Jung, Se-Hoon

---

[2] Plaintiff has asserted U.S. Patent No. 8,930,196 (the "'196 patent") and U.S. Patent No. 8,040,232 (the "'232 patent").

Chin, and Tae-Young Roh as inventors. Google admits that what purports to be a copy of the '196 patent is attached as Exhibit 1 to the Amended Complaint. Google denies that the '196 patent is a valid or duly and lawfully issued patent. Google denies any remaining allegations of paragraph 17.

18.    Google admits that the '196 patent purports to list Koreapowervoice Co., Ltd. ("PowerVoice") as an assignee. Google lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 18 and, on that basis, denies them.

19.    This paragraph consists of argument and legal conclusions to which no response is required. To the extent the allegations in this paragraph purport to summarize, characterize, and/or quote the contents of one or more documents, Google refers to those documents for a true and complete statement of their contents. To the extent a further response is required, Google denies that the claims of the '196 patent are directed to patent-eligible subject matter and satisfy the requirements of 35 U.S.C. § 101. Google denies that the quoted language of paragraph 19 exists at the citation listed for it. Google denies the remaining allegations of paragraph 19.

20.    This paragraph consists of argument and legal conclusions to which no response is required. To the extent the allegations in this paragraph purport to summarize, characterize, and/or quote the contents of one or more documents, Google refers to those documents for a true and complete statement of their contents. To the extent a further response is required, Google denies the remaining allegations of paragraph 20.

21.    This paragraph consists of argument and legal conclusions to which no response is required. To the extent the allegations in this paragraph purport to summarize, characterize, and/or quote the contents of one or more documents, Google refers to those documents for a true and complete statement of their contents. To the extent a further response is required, Google denies the remaining allegations of paragraph 21.

22.     This paragraph consists of argument and legal conclusions to which no response is required. To the extent the allegations in this paragraph purport to summarize, characterize, and/or quote the contents of one or more documents, Google refers to those documents for a true and complete statement of their contents. To the extent a further response is required, Google denies the remaining allegations of paragraph 22.

23.     Google admits the allegations of paragraph 23.

24.     Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 and, on that basis, denies them.

25.     This paragraph consists of argument and legal conclusions to which no response is required. To the extent a further response is required, Google admits that the '232 patent is entitled "USN Middleware Apparatus and Method for Generating Information Based on Data from Heterogeneous Sensor Networks and Information Service Providing System Using the Same" and bears an issue date of October 18, 2011. Google admits that the '232 patent purports to name Se-Won Oh, Yong-Joon Lee, and Jong-Hyun Park as inventors. Google admits that what purports to be a copy of the '232 patent is attached as Exhibit 2 to the Amended Complaint. Google denies that the '232 patent is a valid or duly and lawfully issued patent. Google denies any remaining allegations of paragraph 25.

26.     Google admits that the '232 patent purports to list Electronics and Telecommunications Research Institute ("ETRI") as an assignee. Google lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 26 and, on that basis, denies them.

27.     This paragraph consists of argument and legal conclusions to which no response is required. To the extent the allegations in this paragraph purport to summarize, characterize, and/or

quote the contents of one or more documents, Google refers to those documents for a true and complete statement of their contents. To the extent a further response is required, Google denies that the claims of the '232 patent are directed to patent-eligible subject matter and satisfy the requirements of 35 U.S.C. § 101. Google denies the remaining allegations of paragraph 27.

28. This paragraph consists of argument and legal conclusions to which no response is required. To the extent the allegations in this paragraph purport to summarize, characterize, and/or quote the contents of one or more documents, Google refers to those documents for a true and complete statement of their contents. To the extent a further response is required, Google denies the remaining allegations of paragraph 28.

29. This paragraph consists of argument and legal conclusions to which no response is required. To the extent the allegations in this paragraph purport to summarize, characterize, and/or quote the contents of one or more documents, Google refers to those documents for a true and complete statement of their contents. To the extent a further response is required, Google denies the remaining allegations of paragraph 29.

30. Google admits the allegations of paragraph 30.

## ACCUSED INSTRUMENTALITIES

31. Google denies all allegations in paragraph 31, and Google denies that its products or services infringe directly, contributorily, by inducement, or otherwise any valid and enforceable claim of the Asserted Patents.

32. Google denies all allegations in paragraph 32, and Google denies that its products or services infringe directly, contributorily, by inducement, or otherwise any valid and enforceable claim of the Asserted Patents.

33.      Google denies all allegations in paragraph 33, and Google denies that its products or services infringe directly, contributorily, by inducement, or otherwise any valid and enforceable claim of the Asserted Patents.

34.      This paragraph alleges no facts to which a response is necessary. To the extent a response is required, Google denies that it, either directly or through subsidiaries or intermediaries, has committed or is committing any acts of infringement as alleged by Plaintiff in this or any other District. Google denies any remaining allegations of paragraph 34.

## COUNT I – INFRINGEMENT OF THE '196 PATENT

35.      Google denies the allegations of paragraph 35.

36.      Google denies all allegations in paragraph 36, and Google denies that its products or services infringe directly, contributorily, by inducement, or otherwise any valid and enforceable claim of the '196 Patent.

## COUNT II – INFRINGEMENT OF THE '232 PATENT

37.      Google denies the allegations of paragraph 37.

38.      Google denies all allegations in paragraph 38, and Google denies that its products or services infringe directly, contributorily, by inducement, or otherwise any valid and enforceable claim of the '232 Patent.

## NOTICE AND INFRINGEMENT

39.      To the extent the allegations of this paragraph purport to characterize the contents of one or more documents, the documents speak for themselves. To the extent a further response is required, Google admits that in *KAIFI LLC v. Amazon.com, Inc., et al.*, Case 2:24-cv-00542 (E.D. Tex. July 17, 2024), the defendants served document and deposition subpoenas on Google. Except as expressly admitted herein, Google denies each and every allegation of paragraph 39.

40.     This paragraph consists of argument, speculation, and legal conclusions to which no response is required. To the extent a response is required, Google denies the allegations of paragraph 40.

41.     This paragraph consists of argument, speculation, and legal conclusions to which no response is necessary. To the extent a response is required, Google denies the allegations of paragraph 41.

42.     Google denies the allegations of paragraph 42.

43.     Google denies the allegations of paragraph 43.

44.     Google denies the allegations of paragraph 44.

45.     Google denies the allegations of paragraph 45.

46.     Google denies the allegations of paragraph 46.

47.     Google denies the allegations of paragraph 47.

48.     Google denies the allegations of paragraph 48.

49.     Google denies the allegations of paragraph 49.

50.     Google denies the allegations of paragraph 50.

51.     Google denies the allegations of paragraph 51.

52.     Google denies the allegations of paragraph 52.

53.     This paragraph consists of argument and legal conclusions to which no response is required. To the extent a further response is required, Google denies the allegations of paragraph 53.

54.     This  paragraph consists of argument and legal conclusions to which no response is required. To the extent a further response is required, Google lacks knowledge or information

sufficient to form a belief as to the truth of the allegations of paragraph 54 and, on that basis, denies them.

## PRAYER FOR RELIEF

These paragraphs set forth the statement of relief requested by Plaintiff to which no response is required. Google denies that Plaintiff is entitled to any requested relief, and Google denies that its products or services infringe directly, contributorily, by inducement, or otherwise any valid and enforceable claim of the Asserted Patents.

## DEMAND FOR JURY TRIAL

Plaintiff's demand for a trial by jury for all issues so triable does not state any allegation, and Google is not required to respond. To the extent that any allegations are included in the demand, Google denies these allegations.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof it would not otherwise bear, Google asserts the following separate and additional affirmative defenses, all of which are pleaded in the alternative.

### Defense No. 1: Failure to State a Claim

55.     The Complaint fails to state a claim upon which relief may be granted.

### Defense No. 2: Non-Infringement

56.     Google does not infringe and has not infringed (not directly, contributorily, or by inducement), either literally or under the doctrine of equivalents, and is not liable for infringement of, any valid and enforceable claim of any of the Asserted Patents. Further, any Google product, service, or other instrumentality that is accused of infringement has substantial uses that do not infringe and therefore cannot contribute to the infringement of any of the Asserted Patents.

### Defense No. 3: Invalidity

57.     On information and belief, one or more claims of each Asserted Patent are invalid and unenforceable because they do not meet the conditions of patentability and/or comply with the requirements of 35 U.S.C. §§ 101, *et seq.*, including but not limited to §§ 101, 102, 103, 112, 116, 251, 282(b), or judicially created doctrines of invalidity, including but not limited to obviousness-type double patenting, improper inventorship, and the Rules and Regulations of the U.S. Patent and Trademark Office relating to the validity of patents.

### Defense No. 4: Limitations on Damages

58.     Plaintiff's claims for damages and recovery of costs are limited by 35 U.S.C. §§ 286, 287, and/or 288. Further, Plaintiff's claims for relief are limited, in whole or in part, to an amount that is fair, reasonable, and non-discriminatory.

## Defense No. 5: Failure to Mark

59.     Plaintiff is limited in its right to seek damages due to a failure to mark products covered by any of the Asserted Patents including, but not limited, to products covered by any of the Asserted Patents made, used, offered for sale, or sold by prior and current assignees and licensees of any of the Asserted Patents.

## Defense No. 6: Prosecution History Estoppel

60.     Plaintiff's claims are barred, in whole or in part, under the doctrine of prosecution history estoppel.

## Defense No. 7: Equity

61.     Plaintiff's claims are barred, in whole or in part, under additional principles of equity, including but not limited to the equitable doctrines of prosecution laches, waiver, forfeiture, acquiescence, estoppel, and/or unclean hands.

## Defense No. 8: License and Exhaustion

62.     On information and belief, Plaintiff's claims for relief are barred in whole or in part by an express or implied license, release, stand-still agreement, and/or the patent exhaustion doctrine.

## Defense No. 9: Use or Manufacture for the United States

63.     Plaintiff's claims for relief are barred by 28 U.S.C. § 1498 to the extent they arise from use or manufacture of the alleged inventions of the Asserted Patents by or for the United States government.

## Defense No. 10: Divided Infringement

64.     One or more claims of the Asserted Patents require actions by multiple parties to infringe recited methods, and Google has not and does not perform every element of such claims.

12

**Defense No. 11: Ensnarement**

65.    Plaintiff's claims for relief under the doctrine of equivalents, if any, are barred by the doctrine of ensnarement.

**Defense No. 12: Exceptionality**

66.    Plaintiff is not entitled to enhanced or increased damages, or attorneys' fees, on the basis that this case is exceptional. Google reserves the right to move for attorneys' fees on the basis that this case is exceptionally frivolous or otherwise exceptional in a manner that warrants an award of attorneys' fees to Google under 35 U.S.C. § 285.

**Defense No. 13: No Willful Infringement**

67.    Plaintiff is not entitled to enhanced damages under 35 U.S.C. § 284 because Plaintiff has failed to meet, and cannot meet as a matter of law, the requirements for willful infringement.

**Defense No. 14: Standing**

68.    On information and belief, Plaintiff lacks standing to bring this action.

**Defense No. 15: No Irreparable Harm**

69.    Plaintiff is not entitled to any form of injunctive relief because Plaintiff has not suffered and will not suffer irreparable harm due to Google's alleged infringement and has an adequate remedy at law.

**Defense No. 16: Invalidity of Patent Term Extension**

70.    The extension of patent term, or any portion thereof, for one or more of the Asserted Patents is invalid under 35 U.S.C. § 282(c) because the extension fails to comply with the requirements of 35 U.S.C. §§ 154(b) and/or 156.

**Defense No. 17: Standards-Setting Misconduct**

71.     Plaintiff's claims are barred, in whole or in part, because Plaintiff and/or its predecessors-in-interest with respect to one or more of the Asserted Patents have engaged in standards-setting misconduct, including without limitation by failing to declare the existence of the '232 patent during relevant standards-setting efforts.

72.     For example, on information and belief, the International Telecommunication Union ("ITU"), a United Nations agency, began standards development efforts in the Ubiquitous Sensor Networks ("USN") space around February 2007.

73.     On information and belief, the ITU began these USN standardization efforts at the behest of the '232 patent's original assignee, the Electronics and Telecommunications Research Institute ("ETRI").

74.     The ITU's standards development efforts ultimately led to several official Recommendations in the USN space, including without limitation:

- Recommendation F.744, "Service description and requirements for ubiquitous sensor network middleware" (Dec. 2009).

- Recommendation Y.2221, "Requirements for support of ubiquitous sensor network (USN) applications and services in the NGN environment" (Jan. 2010).

- Recommendation X.1311, "Information technology – Security framework for ubiquitous sensor networks" (Feb. 2011).

75.     ETRI and its personnel actively participated in the ITU's development process for each of the Recommendations mentioned in paragraph 74 above. For example, ETRI's website lists Marie Kim, Yoo Sangkeun, Hwang Jae Gak, and Cheol Sig Pyo as "Contributors" to the Recommendation F.744. *See* https://ksp.etri.re.kr/ksp/standard/read?id=6080-2010-0016.

76.     To ensure, among other things, that ITU Recommendations are accessible to everybody, the ITU has at all relevant times maintained a Common Patent Policy.

77.    The current version of the Common Patent Policy provides that "any party participating in the work of ITU, ISO or IEC should, from the outset, draw the attention of the Director of ITU-TSB, the director of ITU-BR, or the offices of the CEOs of ISO or IEC, respectively, to any known patent or to any known pending patent application, either their own or of other organizations." *See* https://www.itu.int/en/ITU-T/ipr/Pages/policy.aspx. On information and belief, this provision or a materially similar version has been present in the ITU Common Patent Policy at all relevant times.

78.    The current version of the Common Patent Policy provides that "[i]f a Recommendation | Deliverable is developed and such information as referred to in paragraph 1 has been disclosed, three different situations may arise." *See* https://www.itu.int/en/ITU-T/ipr/Pages/policy.aspx. If the patent holder is willing to negotiate a license free of charge on reasonable and non-discriminatory ("RAND") terms, or if the patent holder is willing to negotiate a license on RAND terms, the Common Patent Policy leaves the patent holder to negotiate with interested parties outside of the ITU. But if "[t]he patent holder is not willing to comply with the provisions of either paragraph 2.1 or paragraph 2.2," then "the Recommendation | Deliverable shall not include provisions depending on the patent." *See* https://www.itu.int/en/ITU-T/ipr/Pages/policy.aspx. On information and belief, these provisions or materially similar versions have been present in the ITU Common Patent Policy at all relevant times.

79.    The current version of the Common Patent Policy provides that regardless of which of the three situations described in paragraph 78 above applies, "the patent holder has to provide a written statement to be filed at ITU-TSB, ITU-BR or the offices of the CEOs of ISO or IEC, respectively, using the appropriate 'Patent Statement and Licensing Declaration' form." *See*

https://www.itu.int/en/ITU-T/ipr/Pages/policy.aspx. On information and belief, this provision or a materially similar version has been present in the ITU Common Patent Policy at all relevant times.

80.     On information and belief, the ITU Common Patent Policy imposed an obligation on ETRI to disclose the '232 patent and/or underlying patent application(s) during the development of at least the Recommendations mentioned in paragraph 74 above.

81.     On information and belief, both the ITU itself and the other entities participating in the development of the ITU Recommendations listed in paragraph 74 understood the Common Patent Policy to impose a duty of disclosure of relevant intellectual property rights, including patent-related rights.

82.     On information and belief, ETRI knew that it was obligated under the Common Patent Policy to disclose the '232 patent and/or underlying patent application(s) during the development of at least the Recommendations listed in paragraph 74 above, and to do so in accordance with the provisions of the Common Patent Policy.

83.     On information and belief, ETRI chose not to honor this obligation.

84.     On information and belief, ETRI's choice not to honor this obligation was done with deceptive and/or fraudulent intent, such as to induce the ITU to adopt a version of the Recommendation where compliance might arguably infringe the '232 patent without also agreeing to license the '232 patent and/or underlying patent application(s) on a reasonable and non-discriminatory basis.

85.     On information and belief, the '232 patent and/or underlying patent application(s) are at least partially embodied in at least the Recommendations listed in paragraph 74 above. Plaintiff has also taken the position in claim construction briefing in this case that ITU Recommendations and publications provide a baseline for the meaning of terms in the '232 patent

such as "Ubiquitous Sensor Network (USN)," "ubiquitous sensor network," and "service platform management unit." *See, e.g.*, Dkt. 65 at 5–8. On information and belief, had ETRI properly disclosed the existence of the '232 patent and/or underlying patent application(s) to the ITU at the outset of the Recommendation drafting process for each of the Recommendations listed in paragraph 74 above, then either ETRI would have been under an obligation to negotiate a license on RAND terms, or the Recommendations listed in paragraph 74 above would have been drafted differently so as to not include any provisions depending on the '232 patent and/or underlying patent application(s).

86.    The failure to disclose the '232 patent and/or underlying patent application(s) during ITU's development of USN-related recommendations is particularly indefensible in light of the fact that ETRI has submitted many patent declarations during the development of other ITU Recommendations. In fact, as of June 25, 2026, ITU's database lists 197 patent statements from ETRI, dating from 1989 to 2026. *See* https://www.itu.int/net4/ipr/search.aspx?sector=ITU-T&class=PS&org=Electronics+and+Telecommunications+Research+Institute&opt=-1&field=anokwcvd. But none of those statements was submitted for the Recommendations listed in paragraph 74.

87.    In other words, ETRI cannot credibly claim that it was unaware of the need to disclose patents and patent applications during the development process for an ITU Recommendation. Nor can it plausibly claim that it thought the Common Patent Policy's provisions only offered an encouragement to disclose relevant patent rights, as opposed to imposing a duty to do so.

88.    Thus, at least by knowingly and intentionally failing to disclose the '232 patent and/or underlying patent application(s) to the ITU while participating in the process of developing

Recommendations pertaining to USN technology—and thus breaching its duties under the ITU Common Patent Policy—ETRI has committed standards-setting misconduct. Plaintiff's claims are thus barred, in whole or in part, by various equitable doctrines, including without limitation equitable estoppel, implied license, waiver, and unclean hands.

## Defense No. 18: Inequitable Conduct

89.     Plaintiff's claims are barred, in whole or in part, because Plaintiff and/or its predecessors-in-interest have committed inequitable conduct with regards to one or more of the Asserted Patents.

90.     For example, first named inventors Se-won Oh and Yong-Joon Lee knew of multiple prior art references that were material to patentability and that were never disclosed to the United States Patent and Trademark Office during prosecution of the '232 patent. For example, Oh and Lee, along with Youngil Kim, authored a June 10, 2005 article entitled "RFID-based Middleware System for Providing Ubiquitous Information Service," which appeared in the journal IPSJ SIG Technical Reports with report number 2005-UBI-8 (84), at pages 461 to 466 ("Oh 2005"). *See* GOOG-KAIFI-CC-00000343. On information and belief, both Oh and Lee were familiar with all the material contained in Oh 2005.

91.     Oh 2005 is also one of the references cited in Exhibit B-15 to Google's Preliminary Invalidity Contentions. In a prior case asserting the '232 patent, defendant Amazon.com, Inc. also charted this reference in its invalidity contentions.

92.     On information and belief, the other named inventor of the '232 patent, Jong-Hyun Park, was also aware of Oh 2005 during the prosecution of the '232 patent. On information and belief, Park was actively involved with RFID and/or USN research at ETRI. On information and

belief, Park was aware of the other research, publications, and patent applications filed by other researchers at ETRI, including Oh 2005.

93.   On information and belief, ETRI's prosecution counsel for the '232 patent, including but not limited to J. Randall Beckers, was also aware of Oh 2005 during the prosecution of the '232 patent, including but not limited to as a result of his conversations with the named inventors of the '232 patent.

94.   Oh 2005 was never submitted for the USPTO's consideration, e.g. via an Information Disclosure Statement, during the '232 patent's prosecution. Thus, Oh 2005 does not appear on the face of the '232 patent.

95.   On information and belief, Oh 2005 was material so that if the United States Patent and Trademark Office had known about that reference during the prosecution of the '232 patent, it would not have granted the '232 patent, for at least the reasons stated in Exhibit B-15 to Google's Preliminary Invalidity Contentions. For example, Oh 2005 discloses or suggests all elements of at least claim 1 of the '232 patent, including but not limited to "a Ubiquitous Sensor Network (USN) middleware for extracting object and environment information by cleaning, classifying and integrating the message received from the sensor network data transmitter, generating conditional events, context aware information, and knowledge contents from the extracted object and environment information, and providing the information service to an application program, the application program providing a user with information related to environment where the sensor network is installed." *See, e.g.*, Exhibit B-15 to Google's Preliminary Invalidity Contentions at 19–34. Thus, Oh 2005 was not cumulative of the other art already of record in the pending application of the '232 patent. Oh 2005 establishes, by itself or in combination with other prior art

references, the unpatentability of the '232 patent for lack of novelty and/or obviousness. Had Oh 2005 been presented to the Patent Office, the '232 patent would not have issued.

96. On information and belief, Se-won Oh, Yong-Joon Lee, Jong-Hyun Park, and/or ETRI's patent prosecution counsel, such as J. Randall Beckers, deliberately withheld Oh 2005 from the USPTO during prosecution of the '232 patent, and they did so with specific intent to deceive the USPTO into issuing claims that it would not have issued had it known the true facts.

97. On information and belief, their specific intent to deceive is reflected in the following facts, among others:

a. On information and belief, these individuals were familiar with Oh 2005. Oh 2005 was published shortly before the first application in the '232 patent's family was filed and only a year and a half before the '232 patent's application was filed. Also, on information and belief, Se-Won Oh and/or Yong-Joon Lee devoted a significant amount of time to drafting this article. As for Jong-Hyun Park, he was familiar with Oh 2005 because of his work at ETRI, for the reasons stated earlier. Patent prosecution counsel was also familiar with Oh 2005 because of their conversations with the named inventors.

b. On information and belief, these individuals knew the Examiner was relying on the absence of the limitation "a Ubiquitous Sensor Network (USN) middleware for extracting object and environment information by cleaning, classifying and integrating the message received from the sensor network data transmitter, generating conditional events, context aware information, and knowledge contents from the extracted object and environment

20

information, and providing the information service to an application program, the application program providing a user with information related to environment where the sensor network is installed." In the June 21, 2011, Notice of Allowance, the examiner stated that the prior art lacked this limitation.

c.  On information and belief, these individuals knew they needed to reveal any prior art disclosing a USN middleware and/or an RFID middleware. For example, their Information Disclosure Statement included U.S. Patent Application Publication No. 2005/0114493, which extensively discusses middleware in the context of mobile ad-hoc networks. But rather than reveal their own, highly relevant publication, they revealed only less relevant publications. Their selective disclosure shows their intent to deceive.

98.     On information and belief, these individuals knew they needed to disclose their relevant prior-art publications. The named inventors are all sophisticated scientists, and they were represented by sophisticated counsel. To the named inventors and their counsel, it would have been obvious to disclose the named inventors' own prior-art publications. Their failure to do so shows their intent to deceive, not mere ignorance.

99.     Furthermore, each named inventor on the '196 patent—Heui-Suck Jung, Se-Hoon Chin, and Tae-Young Roh—knew of multiple prior art references that were material to patentability and that they never disclosed to the USPTO during prosecution of the '196 patent. Their prosecution counsel for the '196 patent, including but not limited to Jaegyoo Jang, Michael Park, and David Fox, were also aware of these references during the prosecution of the '196 patent. By failing to disclose these references, one or more individuals associated with the filing and

prosecution of the '196 patent withheld material information from the USPTO, and these individuals did so with specific intent to deceive the USPTO.

100.    For example, Korean Patent Application Publication No. 10-2008-0026951 ("Jeong 951") lists Heui-Suck Jung as its only inventor.[3] On information and belief, Jung was familiar with all the material contained in Jeong 951.

101.    On information and belief, the other named inventors of the '196 patent, Se-Hoon Chin and Tae-Young Roh, were also aware of Jeong 951 and all the material contained therein. On information and belief, both individuals were actively involved in speech-recognition research at KoreaPowerVoice. They also held prominent positions at KoreaPowerVoice. At the relevant time, KoreaPowerVoice was a small organization with only a handful of researchers. On information and belief, Se-Hoon Chin and Tae-Young Roh were aware of the other research, publications, and patent applications filed by other researchers at KoreaPowerVoice, including Jeong 951.

102.    On information and belief, KoreaPowerVoice's prosecution counsel for the '196 patent, including but not limited to Jaegyoo Jang, Michael Park, and David Fox, were also aware of Jeong 951 during the prosecution of the '196 patent, including but not limited to as a result of their conversations with the named inventors of the '196 patent.

103.    Jeong 951 was never submitted for the USPTO's consideration, e.g. via an Information Disclosure Statement, during the '196 patent's prosecution. Thus, Jeong 951 does not appear on the face of the '196 patent.

---

[3] Heui-Suck Jung's name appears to sometimes be romanized as Hee-seok Jeong.

22

104. On information and belief, Jeong 951 was material so that if the USPTO had known about it during the prosecution of the '196 patent, it would not have granted the '196 patent. On information and belief, the USPTO would not have granted the '196 patent if it knew about Jeong 951, for at least the reasons stated in Exhibit A-12 to Google's Preliminary Invalidity Contentions.

105. For example, Jeong 951 discloses or suggests all elements of at least claim 1 of the '196 patent, including but not limited to "a token passing unit configured to assume the input speech to be the preset call command according to the result of the comparison using a minimum recognition network composed of a silence interval accompanied by noise and the preset call command." *See* Exhibit A-12 to Google's Preliminary Invalidity Contentions at 113–43. Thus, Jeong 951 was not cumulative of the other art already of record in the pending application of the '196 patent. Jeong 951 establishes, by itself or in combination with other prior art references, the unpatentability of the '196 patent for lack of novelty and/or obviousness. Had Jeong 951 been presented to the Patent Office, the '196 patent would not have issued.

106. On information and belief, Heui-Suck Jung, Se-Hoon Chin, and Tae-Young Roh, and/or KoreaPowerVoice's patent prosecution counsel, including but not limited to Jaegyoo Jang, Michael Park, and David Fox, deliberately withheld Jeong 951 from the USPTO during prosecution of the '196 patent, and they did so with specific intent to deceive the USPTO into issuing claims that it would not have issued had it known the true facts.

107. On information and belief, their specific intent to deceive is reflected in the following facts, among others:

    a. On information and belief, these individuals were familiar with Jeong 951. Jeong 951 was published shortly before the first application in the '196 patent's family was filed and only a few years before the '196 patent's

application was filed. Also, on information and belief, Heui-Suck Jung devoted a significant amount of time to assisting with this application. As for Se-Hoon Chin and Tae-Young Roh, they were familiar with Jeong 951 because of their work at KoreaPowerVoice, for the reasons stated earlier. Patent prosecution counsel was also familiar with Jeong 951 because of their conversations with the named inventors.

b. On information and belief, the named inventors and their counsel affirmatively represented to the Examiner—during an examiner interview and at other times—that the prior art did not teach "a token passing unit configured to assume the input speech to be the preset call command according to the result of the comparison using a minimum recognition network composed of a silence interval accompanied by noise and the call command." These representations were false. For example, Heui-Suck Jung's own patent application taught this limitation.

c. On information and belief, these individuals knew the examiner was relying on the absence of this token-passing limitation. In the Notice of Allowance, the examiner stated that the prior art lacked this limitation. The examiner also cited this limitation during the January 29, 2014 Final Rejection and August 8, 2013 Non-Final Rejection.

d. On information and belief, these individuals knew they needed to reveal any prior art disclosing token passing. For example, their Information Disclosure Statement included U.S. Patent Application Publication No. 2005/0149326, which extensively discusses token passing. But rather than

24

reveal their own, highly relevant publication, they revealed only less relevant publications. Their selective disclosure shows their intent to deceive.

   e.   On information and belief, these individuals knew they needed to disclose their relevant prior-art publications. The named inventors are all sophisticated scientists, and they were represented by sophisticated counsel. To the named inventors and their counsel, it would have been obvious to disclose the named inventors' own prior-art publications. Their failure to do so shows their intent to deceive, not mere ignorance.

108.   Additionally and in the alternative, Heui-Suck Jung, Se-Hoon Chin, and Tae-Young Roh, and/or KoreaPowerVoice's patent prosecution counsel, including but not limited to Jaegyoo Jang, Michael Park, and David Fox, engaged in inequitable conduct by failing to disclose the issued version of Jeong 951, Korean Patent No. 10-0832556. This is true for the same reasons that they engaged in inequitable conduct for failing to disclose Jeong 951. Google hereby incorporates by reference, and applies to Korean Patent No. 10-0832556, all its allegations above relating to Jeong 951.

109.   As another example of material non-disclosures by the named inventors Heui-Suck Jung, Se-Hoon Chin, and Tae-Young Roh, and/or KoreaPowerVoice's patent prosecution counsel, including but not limited to Jaegyoo Jang, Michael Park, and David Fox, the USPTO was never made aware of Lee, H. W., & Jeong, H. S. (2008). A study on a vocabulary-independent continuous speech recognition system for intelligent home network systems. The Journal of the Korean Institute of Intelligent Transport Systems, 7(2), 37–42 ("Lee VI"). This article lists Heui-Suck

25

Jung as one of its authors. On information and belief, Jung was familiar with all material contained in Lee VI.

110.    On information and belief, the other named inventors of the '196 patent, Se-Hoon Chin and Tae-Young Roh, were also aware of Lee VI and all the material contained therein. On information and belief, both individuals were actively involved in speech-recognition research at KoreaPowerVoice. They also held prominent positions at KoreaPowerVoice. At the relevant time, KoreaPowerVoice was a small organization with only a handful of researchers. On information and belief, Se-Hoon Chin and Tae-Young Roh were aware of the other research, publications, and patent applications filed by other researchers at KoreaPowerVoice, including Lee VI.

111.    On information and belief, KoreaPowerVoice's prosecution counsel for the '196 patent, including but not limited to Jaegyoo Jang, Michael Park, and David Fox, were also aware of Lee VI during the prosecution of the '196 patent, including but not limited to as a result of their conversations with the named inventors of the '196 patent.

112.    Lee VI was never submitted for the USPTO's consideration, e.g. via an Information Disclosure Statement, during the '196 patent's prosecution. Thus, Lee VI does not appear on the face of the '196 patent.

113.    On information and belief, Lee VI was material so that if the USPTO had known about it during the prosecution of the '196 patent, it would not have granted the '196 patent. On information and belief, the USPTO would not have granted the '196 patent if it knew about Lee VI, for at least the reasons stated in Exhibit A-18 to Google's Preliminary Invalidity Contentions.

114.    For example, Lee VI discloses or suggests all elements of at least claim 1 of the '196 patent, including but not limited to "a token passing unit configured to assume the input speech to be the preset call command according to the result of the comparison using a minimum

26

recognition network composed of a silence interval accompanied by noise and the preset call command." *See* Exhibit A-18 to Google's Preliminary Invalidity Contentions at 30–37. Thus, Lee VI was not cumulative of the other art already of record in the pending application of the '196 patent. Lee VI establishes, by itself or in combination with other prior art references, the unpatentability of the '196 for lack of novelty and/or obviousness. Had Lee VI been presented to the Patent Office, the '196 patent would not have issued.

115. In addition, Lee VI taught that token passing was widely implemented for continuous speech recognition. Lee VI would have allowed the Examiner to combine a reference using token passing with one teaching the other limitations of the '196 patent.

116. On information and belief, Heui-Suck Jung, Se-Hoon Chin, and Tae-Young Roh, and/or KoreaPowerVoice's patent prosecution counsel, including but not limited to Jaegyoo Jang, Michael Park, and David Fox, deliberately withheld Lee VI from the USPTO during prosecution of the '196 patent, and they did so with specific intent to deceive the USPTO into issuing claims that it would not have issued had it known the true facts.

117. On information and belief, their specific intent to deceive is reflected in the following facts, among others:

   a. On information and belief, these individuals were familiar with Lee VI. Lee VI was published shortly before the first application in the '196 patent's family was filed and only a few years before the '196 patent's application was filed. Also, on information and belief, Heui-Suck Jung devoted a significant amount of time to assisting with this article. As for Se-Hoon Chin and Tae-Young Roh, they were familiar with Lee VI because of their work at KoreaPowerVoice, for the reasons stated earlier. Patent prosecution

27

counsel was also familiar with Lee VI because of their conversations with the named inventors.

b.  On information and belief, the named inventors and their counsel affirmatively represented to the Examiner—during an examiner interview and at other times—that the prior art did not teach "a token passing unit configured to assume the input speech to be the preset call command according to the result of the comparison using a minimum recognition network composed of a silence interval accompanied by noise and the call command." These representations were false. Heui-Suck Jung's own article taught this limitation.

c.  On information and belief, these individuals knew the examiner was relying on the absence of this token-passing limitation. In the Notice of Allowance, the examiner stated that the prior art lacked this limitation. The examiner also cited this limitation during the January 29, 2014 Final Rejection and August 8, 2013 Non-Final Rejection.

d.  On information and belief, these individuals knew they needed to reveal any prior art disclosing token passing. For example, their Information Disclosure Statement included U.S. Patent Application Publication No. 2005/0149326, which extensively discusses token passing. But rather than reveal their own, highly relevant publication, they revealed only less relevant publications. Their selective disclosure shows their intent to deceive.

e.  On information and belief, these individuals knew they needed to disclose their relevant prior-art publications. The named inventors are all experienced engineers or scientists, and they were represented by sophisticated counsel. To the named inventors and their counsel, it would have been obvious to disclose the named inventors' own prior-art publications. Their failure to do so shows their intent to deceive, not mere ignorance.

118.  The above are non-limiting examples of inequitable conduct relating to the Asserted Patents. Google reserves the right to seek discovery into additional theories of inequitable conduct. Google reserves the right to plead additional theories of inequitable conduct, including without limitation theories based on non-disclosure of prior art, based on information discovered later in the case, such as through discovery.

**Reservation Of Additional Defenses**

Google reserves the right to assert and rely on any additional defenses that may come available or apparent, and to amend its Answer and/or defenses accordingly.

## DEMAND FOR A JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Google demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Google respectfully requests that the Court enter judgment in its favor and against Plaintiff as follows:

a)  declaring that Google has not infringed and is not infringing any claim of the Asserted Patents, literally or under the doctrine of equivalents, or in any other

29

way;

b) declaring that the Asserted Patents are invalid or unenforceable;

c) dismissing, with prejudice, all of Plaintiff's claims against Google;

d) denying all remedies sought by Plaintiff in the Complaint;

e) declaring this case exceptional under 35 U.S.C. § 285 and awarding Google its costs, expenses, and disbursements in this action, including attorneys' fees and expert witness fees;

f) limiting or barring Plaintiff's ability to enforce the Asserted Patents in equity; and

g) granting Google any such other and further relief as the Court may deem necessary, just, or proper.

Respectfully submitted,

DATED: June 26, 2026

/s/ Vincent Y. Ling

Vincent Y. Ling (*pro hac vice*)
Heather E. Takahashi
L. Ashley Aull (*pro hac vice*)
Peter E. Gratzinger (*pro hac vice*)
Rebecca Ho (*pro hac vice*)
Jacob Todd (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Fax: (213) 687-3702
vincent.ling@mto.com
heather.takahashi@mto.com
ashley.aull@mto.com
peter.gratzinger@mto.com
rebecca.ho@mto.com
jacob.todd@mto.com

Nathaniel St. Clair, II
Texas State Bar No. 24071564
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-6000
Fax: (214) 953-5822
nstclair@jw.com

Arthur Gollwitzer, III
Paige Vonne Welch
Texas State Bar No. 24073336
Texas State Bar No. 24138184
JACKSON WALKER L.L.P.
100 Congress Avenue, Suite 1100
Austin, TX 78701
Telephone: (512) 236-2000
Fax: (512) 236-2002
agollwitzer@jw.com
pwelch@jw.com

Kevin Han Yang
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Fax: (415) 512-4077
kevin.yang@mto.com

***Attorneys for Defendant Google LLC***

31

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system on June 26, 2026.

/s/ Paige V. Welch
Paige Vonne Welch